UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
COURT FILE NO.: CV -08-cv-1467 PJS/RLE

| | |
|---|---|
| Diana Rawlings,<br><br>        Plaintiff,<br>v.<br><br>Asset Acceptance Capital Corp. d/b/a Asset Acceptance, LLC; Experian Information Solutions, Inc.; CSC Credit Services, Inc.; and Doe Records Vendor,<br><br>        Defendants. | **AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331, and pursuant to 15 U.S.C. §1681 et seq., and 15 U.C.S. § 1692k(d)

2. This action arises out of Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").

## PARTIES

3. Plaintiff Diana Rawlings is a natural person who resides in the City of Woodbury, County of Washington, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

4. Defendant Asset Acceptance Capital Corp. d/b/a Asset Acceptance LLC (hereinafter "Defendant Asset Acceptance") is a debt collector headquartered at 28405 Van Dyke Avenue, Warren, MI 48093 and is a "debt collector" as that term

1

is defined by 15 U.S.C. § 1692a(6). Asset Acceptance is a "furnisher of information" as that term is used in 15 U.S.C. § 1681s-2(b).

5. Defendant Experian Information Solutions, Inc. (hereinafter "Defendant Experian") is a foreign corporation incorporated under the laws of Ohio and is authorized to do business in the State of Minnesota. Experian is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f) of the Act, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) of the Act, to third parties.

6. Defendant CSC Credit Services (hereinafter "Defendant CSC") is a foreign corporation incorporated under the laws of Texas and authorized to do business in the State of Minnesota. CSC is a consumer credit reporting agency as defined by 15 U.S.C. §1681a(f) of the Act, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) of the Act, to third parties.

7. Defendant Doe Records Vendor (hereinafter "Defendant Doe") is an unknown entity which provides public record searches for the credit reporting agencies.

## FACTUAL ALLEGATIONS

8. In June of 1999 Plaintiff moved from New York to the state of Virginia.

9. On or about June 2, 2004, Defendant Asset Acceptance commenced an action in the District Court of the County of Suffolk in the state of New York against Plaintiff (at that time known as "Diane Massi") in an attempt to collect a consumer debt as that term is defined by 15 U.S.C. § 1692a(5).

10. On October 6, 2004, a default judgment in the amount of $15,568.21 was entered against Plaintiff in favor of Defendant Asset Acceptance as assignee of Household Bank.

11. Plaintiff never received a summons and complaint prior to entry of the judgment, nor did she ever receive notice of the entry of judgment thereafter.

12. Plaintiff to this day has no knowledge of the alleged debt originating with Household Bank.

13. Sometime in 2005 Plaintiff moved to Minnesota with her husband.

14. In June 2006 Plaintiff and her husband applied for an apartment lease, which required an examination of Plaintiff's credit report.

15. Plaintiff was shocked to learn that her application was denied based upon the existence of a Suffolk County judgment contained in her credit report provided by Defendant Experian.

16. Plaintiff immediately requested the court file from New York to investigate the mysterious judgment contained in her credit report.

17. In or about October 2006 Plaintiff called Defendant Asset Acceptance to inquire about the judgment and alleged underlying debt. Plaintiff told Defendant Asset Acceptance's agent that she only recently learned of the judgment. Defendant

Asset Acceptance told Plaintiff that all paperwork had been sent to her previous New York address where Plaintiff had not resided for eight years. Plaintiff explained she had no knowledge of the debt, and demanded validation. Defendant Asset Acceptance hung up on Plaintiff.

18. On or about October 15, 2006, Plaintiff sent Defendant Asset Acceptance a letter again requesting information and validation of the alleged debt. Plaintiff never received a response from Defendant Asset Acceptance.

19. On or about July 2, 2007, Plaintiff sent a letter to Defendant Asset Acceptance's attorneys, Sharinn and Lipsie, PC in New York, again requesting information about the case and subsequent judgment obtained without her knowledge. Plaintiff reiterated that she had no knowledge of the underlying debt. Plaintiff never received a response to her letter dated July 2, 2007.

20. On or about July 26, 2007, Plaintiff filed a Motion to Vacate the Default Judgment in the District Court of the County of Suffolk.

21. On or about August 2, 2007, the District Court ordered Defendant Asset Acceptance, its agents, and the Sheriff to refrain from conducting any proceedings to enforce the judgment pending the hearing of Plaintiff's motion.

22. On August 29, 2007, Plaintiff's Motion to Vacate the Default Judgment was granted.

23. Despite the order dated August 2, 2007, and the Motion to Vacate granted on August 29, 2007, Defendant Asset Acceptance hired Messerli & Kramer

(hereinafter "M&K"), a debt collection law firm in Minnesota, to begin collecting from Plaintiff, in violation of 15 U.S.C. §§ 1692d and 1692f.

24. On or about September 14, 2007, M&K commenced collection activity at the direction of Defendant Asset Acceptance by serving an Execution/Garnishment Exemption Notice and Notice of Intent to Levy or Garnish Earnings upon Plaintiff, in violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(4), 1692e(5), and 1692f.

25. On or about September 15, 2007, Plaintiff sent M&K a letter demanding it comply with the Court's order dated August 27, 2007, and cease all collection activity being pursued against her.

26. On or about September 16, 2007, Plaintiff also sent a letter to Defendant Asset Acceptance demanding it comply with the Court's order dated August 27, 2007, cease all collection efforts, and remove the derogatory information contained in her credit report.

27. In or about February 2008 Plaintiff completed an online dispute form with Defendant Experian regarding the default judgment, wherein Plaintiff explained that she had no knowledge of the original debt, that the judgment had been obtained without her knowledge, that it had since been vacated in August 2007, and requested Defendant Experian to remove the incorrect and damaging tradeline from her credit report.

28. In or about February 2008 Plaintiff attempted to complete an online dispute form with Defendant Equifax, but was unable to do so due to technical problems with the website.

29. Upon information and belief, Defendant Experian communicated to Defendant Asset Acceptance notice of Plaintiff's February 2008 dispute pursuant to 15 U.S.C. § 1681i(a)(2)(A)(B).

30. On February 12, 2008, Plaintiff was informed by Defendant Experian that Defendant Asset Acceptance verified the incorrect and derogatory tradeline, in violation of 15 U.S.C. § 1681s-2(b), 15 U.S.C. §§ 1692e, 1692e(8), and 1692f.

31. On or about February 12, 2008, Plaintiff sent letters to Defendant Asset Acceptance and its New York-based attorneys, again demanding the incorrect and derogatory tradeline be removed from her credit report.  Plaintiff never received a response.

32. On or about February 12, 2008, Plaintiff sent a letter to the Minnesota Attorney General's Office seeking assistance in regards to her ongoing dispute with Defendants.

33. On or about February 19, 2008, the Minnesota Attorney General's Office responded in writing to Plaintiff's complaint dated February 12, 2008, stating Plaintiff should file a complaint with the Department of Commerce, and that a copy of Plaintiff's complaint had been forwarded to Defendant Asset Acceptance.

34. On or about March 4, 2008, Plaintiff received a letter from the Minnesota Attorney General's office, along with the response dated February 28, 2008, received from Defendant Asset Acceptance regarding Plaintiff's dispute.

35. In the letter dated February 28, 2008, from Defendant Asset Acceptance to the Minnesota Attorney General's Office, Defendant stated it "is honoring the Judgment to Vacate, has closed the account in question, and has ceased all

collection activity," and that it had requested the removal of its tradeline with the credit reporting agencies in June 2006 (even though the judgment was not vacated until August 2007), despite the fact it had recently instigated collection activity against Plaintiff in September of 2007, and the continued existence of Defendant Asset Acceptance's tradeline in Plaintiff's credit report.

36. On or about March 5, 2008, Plaintiff completed an Experian online dispute form, wherein Plaintiff again explained that she had no knowledge of the original debt, that the judgment had been obtained without her knowledge, that it had since been vacated in August 2007, and requested Defendant Experian remove the tradeline from her credit report.

37. Upon information and belief, Defendant Experian communicated to Defendant Asset Acceptance notice of Plaintiff's March 5, 2008, dispute pursuant to 15 U.S.C. § 1681i(a)(2)(A)(B).

38. Upon information and belief, pursuant to 15 U.S.C. § 1681s-2(b) et seq., Defendant Asset Acceptance responded to Plaintiff's March 5, 2008, dispute, and again verified the default judgment, in violation of 15 U.S.C. § 1681s-2(b), 15 U.S.C. §§ 1692e, 1692e(8), and 1692f.

39. Defendant Experian failed to conduct a reasonable investigation of Plaintiff's March 5, 2008, dispute and continued to report the judgment on her credit report, all in violation of 15 U.S.C. § 1681i.

40. On or about April 14, 2008 Plaintiff sent dispute letters to Defendants CSC and Experian. Therein, Plaintiff again explained that the judgment had been vacated, and that it should be removed from her credit report.

41. On or about April 29, 2008, Defendant Experian responded in writing to Plaintiff's April 14, 2008, dispute, wherein Defendant stated "we have already investigated this information and the credit grantor has verified its accuracy. Please refer to the personal credit report you received....."

42. Defendant Experian did not conduct a reasonable investigation of Plaintiff's April 14, 2008, dispute and again failed to remove the incorrect and derogatory tradeline from Plaintiff's credit report, all in violation of 15 U.S.C. § 1681i.

43. On May 2, 2008, while waiting for the results of her April 14, 2008, dispute to Defendant CSC, Plaintiff went online to check the status of her credit report.

44. Plaintiff was shocked and utterly frustrated to learn that instead of removing the judgment entirely from her credit report, Defendant CSC had at some point updated it as a "satisfied judg[e]ment," in violation of 15 U.S.C. § 1681i and 1681e.

45. Defendant CSC failed to provide Plaintiff the results of the investigation of her April 14, 2008, dispute within the 30 day time limit in violation of 15 U.S.C. § 1681i.

46. However, Plaintiff did receive CSC's investigation results dated May 21, 2008 which failed to vacate the judgment and therefore failed to reasonably investigate the dispute in violation of 15 USC §1681i.

47. To date, Defendants Experian and CSC are still falsely and inaccurately reporting the vacated default judgment in violation of 15 U.S.C. §1681(e)(b) to third parties, such as M & K, Choicepoint Resident, and the Postal Credit Union.

48. Defendant Doe furnished inaccurate information about Plaintiff to the credit reporting agencies in violation of 15 U.S.C. § 1681s-2(a) and (b).

49. As a result of Defendants' conduct, actions and inaction, Plaintiff has suffered out-of-pocket expenses, detriment to her credit rating, embarrassment, anxiety, and humiliation in an amount to be determined at trial.

## TRIAL BY JURY

50. Plaintiff is entitled to and hereby requests a trial by jury.  US Const. Amend. 7. Fed. R. Civ. P. 38.

## CAUSE OF ACTION

### COUNT I.

### VIOLATION OF THE FAIR CREDIT REPORTING ACT - 15 U.S.C. § 1681, ET SEQ. – AGAINST DEFENDANTS EXPERIAN AND CSC

51. Plaintiff incorporates by reference the preceding paragraphs as though fully stated herein.

52. Defendants prepared, compiled, issued, assembled, and communicated inaccurate, erroneous, blatantly false information regarding Plaintiff, as defined in the Fair Credit Reporting Act.

53. Defendants willfully and/or negligently violated 15 U.S.C. § 1681e(b) by failing to employ reasonable procedures to assure maximum possible accuracy in the preparation of the consumer credit report concerning Plaintiff, which it disseminated to third persons such as current and prospective creditors.

54. Defendants willfully and/or negligently violated 15 U.S.C. § 1681i(a) by failing to conduct a reasonable and independent investigation and to remove inaccurate information from Plaintiff's credit files after receiving actual notice of such inaccurate information.

55. As a result of Defendants' conduct, action and inaction, Plaintiff has suffered humiliation, mental anguish, and damages to her credit worthiness, which is defamation per se.

56. Defendants' conduct, actions and inactions were willful, rendering Defendants liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n of the Act.

57. Plaintiff is entitled to recover costs and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o of the Act.

## COUNT II.

**VIOLATION OF THE FAIR CREDIT REPORTING ACT - 15 U.S.C. § 1681S-2(B) – AGAINST DEFENDANTS ASSET ACCEPTANCE AND DOE**

58. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

59. Defendants willfully and/or negligently violated 15 U.S.C. § 1681s-2(a) by furnishing inaccurate information about Plaintiff to credit reporting agencies following Plaintiff's disputes.

60. Defendants willfully and/or negligently violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation upon receiving notice of Plaintiff's disputes, failing to appropriately report the results of its investigation, and/or failing to appropriately modify, delete, and/or block the information.

61. As a result of Defendants' violations of 15 U.S.C. § 1681s-2(b), Plaintiff has suffered actual damages not limited to out-of-pocket expenses, detriment to her credit rating, emotional distress, embarrassment, mental anguish, anxiety, and humiliation in an amount to be determined at trial.

62. Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. §§ 1681n and 1681o.

63. Defendants' conduct, actions and inaction were willful, rendering it liable for punitive damages in an amount to be allowed by the Court pursuant to 15 U.S.C. § 1681n.

64. Plaintiff is entitled to recover costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT III

**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT - 15 U.S.C. § 1692 ET. SEQ. – AGAINST DEFENDANT ASSET ACCEPTANCE**

65. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

66. The foregoing acts and omissions of Defendant constitutes numerous violations of the FDCPA, including but not limited to each and every one of the several provisions of the FDCPA, 15 U.S.C. § 1692 et seq. cited above.

67. As a result of Defendant's violations of the FDCPA, Plaintiff has suffered actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

**WHEREFORE**, Plaintiff prays that judgment be entered against these Defendants for:

   a. actual damages in an amount to be determined at trial;
   b. statutory and punitive damages in an amount to be determined at trial against all Defendants;
   c. costs and reasonable attorney fees pursuant to 15 U.S.C. § 1681 *et seq*. against all Defendants;
   d. injunctive relief for an accurate credit report; and
   e. other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated this 3rd day of June, 2008.

By: s/Thomas J. Lyons, Jr
**CONSUMER JUSTICE CENTER, P.A.**
Thomas J. Lyons, Jr., Esq.
Attorney I.D. #0249646
Trista M. Roy Esq.
Attorney I.D. 0387737
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile:(651) 704-0907
tommycjc@aol.com

**ATTORNEYS FOR PLAINTIFF**

## **VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF**

STATE OF MINNESOTA        )
                          ) ss
COUNTY OF Washington      )

Diana Rawlings, having first been duly sworn and upon oath, deposes and says as follows:

1. I am the Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendants, cause unnecessary delay to any Defendants, or create a needless increase in the cost of litigation to any Defendants, named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

s/Diana Rawlings_____
Diana Rawlings

Subscribed and sworn to before me
this 24th day of May, 2008.

s/Jonathan C. Fitz_____
Notary Public